UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-21920-CIV-SCOLA/SANCHEZ

CHARLES LESLIE STILWELL,

     Plaintiff,

v.

DEFENDANT "1" a/k/a AMITY ZHANG a/k/a
ZHANG XIAOJIE, an individual, and JOHN
DOES 1-20, as yet unidentified individuals,
business entities, and/or unincorporated
associations,

     Defendants.

_____/

**ORDER DENYING MOTION FOR FINAL DEFAULT JUDGMENT WITHOUT PREJUDICE**

This matter is before the Court on the Plaintiff's Motion for Final Default Judgment, ECF No. 18,[1] against Defendant "1" a/k/a Amity Zhang a/k/a Zhang Xiaojie ("Defendant 1"). Defendant 1 did not respond to the Complaint, ECF No. 1, to the Plaintiff's Motion for Entry of Clerk's Default, ECF No. 14, or to the Plaintiff's Motion for Final Default Judgment, and the deadlines to do so have long passed. After careful consideration of the Plaintiff's filings, the record, and the applicable law, and the undersigned being otherwise fully advised in the premises, the Plaintiff's Motion for Final Default Judgment, ECF No. 18, is **DENIED WITHOUT PREJUDICE**.

---

[1] This matter was referred to the undersigned by the Honorable Robert N. Scola, Jr., United States District Judge. *See* ECF No. 19.

## I. BACKGROUND

### A. Procedural Background

Plaintiff filed his Complaint on May 23, 2023, seeking damages based on the actions of Defendant 1 and John Does 1-20 ("Doe Defendants") (collectively with Defendant 1, "Defendants"). ECF No. 1. Pursuant to this Court's Order Authorizing Alternate Service of Process, ECF No. 6, Plaintiff's counsel served Defendant 1 with a non-fungible token (NFT) containing summons language and a hyperlink to Plaintiff's service website, which contained the Complaint, summons, and other pleadings in this action. ECF No. 18 at 3. When Defendant 1 did not respond to the Complaint, Plaintiff moved for entry of Clerk's Default as to Defendant 1, which was entered on December 7, 2023. ECF Nos. 14, 15. That same day, Judge Scola entered an Order outlining default judgment procedures. ECF No. 16. The Order states, in part:

> Where there are multiple Defendants, but no possibility of inconsistent liability between Defendants (which, for example, could arise from allegations of joint and several liability where fewer than all of the defendants are in default), Plaintiff shall file a *Motion for Default Judgment*, consistent with Federal Rule of Civil Procedure 55(b). The Plaintiff must state in the Motion for Default Judgment that there are no allegations of joint and several liability, and set forth the basis why there is no possibility of inconsistent liability.

*Id.* at 1.

Plaintiff then filed the instant Motion for Final Default Judgment and attached to it a Damage Declaration of Plaintiff Charles Leslie Stilwell. ECF Nos. 18, 18-1. To date, Defendant 1 has not responded to the Complaint, the Plaintiff's Motion for Entry of Clerk's Default, or the Plaintiff's Motion for Final Default Judgment, and Defendant 1 has not filed any appearance, motion, or any other papers in this action.

2

**B.      Factual Background[2]**

In early 2022,[3] Defendant 1 contacted the Plaintiff through Facebook, and Defendant 1 subsequently asked Plaintiff if they could expand their communications to WhatsApp; Plaintiff agreed. ECF No. 1 at ¶ 11. On or about February 24, 2022, Defendant 1 misrepresented to Plaintiff that her "Uncle Charlie" operated a four-person cryptocurrency trading group through an online cryptocurrency exchange called XHEX. *Id.* at ¶ 12. Defendant 1 claimed Uncle Charlie's group produced 350% annual returns and showed a screenshot displaying ostensible earnings of $20,000 for that day. *Id.* Defendant 1 further misrepresented to Plaintiff that Uncle Charlie wanted to prepare a trading plan for Plaintiff and that Plaintiff could withdraw his profits from XHEX at any time. *Id.* at ¶ 12. Based on Defendant 1's misrepresentations, Plaintiff opened an XHEX trading account "on or about February 29, 2022."[4] *Id.* at ¶ 13. Based on Defendant 1's invitation for Plaintiff to invest according to her advice, Plaintiff relied on Defendant 1's ostensibly superior knowledge of cryptocurrency to guide him in making his investments. *Id.* at ¶ 16. In reality, XHEX was a fraudulent website, not an exchange, and it incorporated a dashboard showing falsified "gains" on Plaintiff's investments. *Id.* at ¶¶ 17-18.

After a few months of "investing," *see id.* at ¶¶ 31-32, on or about April 28, 2022, Plaintiff attempted to withdraw $50,000. *Id.* at ¶ 20. However, the XHEX platform on various occasions declined Plaintiff's withdrawal requests and required Plaintiff to deposit more money into his

---

[2] The following facts are deemed admitted with respect to Defendant 1 by virtue of the default. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

[3] The Court notes that the Complaint states that Defendant 1 contacted the Plaintiff on "June 20, 2022," but this date does not correspond with the rest of the alleged timeline, especially given that Defendant 1's misrepresentations to Plaintiff had begun by February 2022, the Plaintiff had opened his XHEX account or about the end of February 2022, and the Plaintiff was transmitting funds to the Defendants long before June 2022. *See, e.g.*, ECF No. 1 at ¶¶ 12, 13, 31-32.

[4] The Court recognizes that there was no February 29th in 2022.

account to, *inter alia*, "'prove' he was not money laundering," "restore credit," and "achieve the VIP status." *Id.* at ¶¶ 20-25. As a result, and with urging from Defendant 1, Plaintiff made payments of more than $500,000 in additional funds to be able to withdraw funds from XHEX, but he was unable to withdraw funds. *Id.* at ¶¶ 21-25. Finally, the platform stated that Plaintiff owed another $91,703 as a "withdrawal risk deposit," but even after Uncle Charlie urged Plaintiff on August 4, 2022 to pay that additional sum, Plaintiff refused. *Id.* at ¶¶ 25-27. The Defendants thereafter ceased communicating with Plaintiff. *Id.* at ¶ 27.

In total, Plaintiff sent cryptocurrency in twenty-six different transactions to six different cryptocurrency wallets controlled by Defendant 1. *See id.* at ¶¶ 31-36. Those funds were traced through multiple cryptocurrency wallets to five cryptocurrency exchanges. *See id.* at ¶¶ 37-39. According to the Plaintiff's allegations, the Defendants "individually or jointly in any combination" control the cryptocurrency wallets and cryptocurrency exchange accounts in which the Plaintiff's stolen funds are located. *Id.* at ¶ 9. The Defendants also "orchestrated, i.e., directed or themselves made, all of the fraudulent 'exchange's' communications (i.e., misrepresentations) to Plaintiff inducing him to each time make additional payments." *Id.* at ¶ 19. In total, "Defendants stole the entirety of Plaintiff's funds," which had a value in excess of $1 million. *Id.* at ¶ 28.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 contains a two-step process by which a party may obtain a final default judgment. Fed. R. Civ. P. 55. For any defendant that fails to plead or otherwise defend against a lawsuit, the Clerk may enter a clerk's default. Fed. R. Civ. P. 55(a). Thereafter, "[p]ursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1258 (S.D. Fla. 2016).

A Clerk's entry of default, however, does not automatically entitle a plaintiff to a default judgment. *See, e.g.*, *Cohan v. Baby Marathon, LLC*, No. 20-60185-CIV-WILLIAMS/VALLE, 2020 WL 6731041, at *1 (S.D. Fla. Oct. 27, 2020) (explaining that a motion for default judgment "is not granted as a matter of right"), *report and recommendation adopted*, 2020 WL 6729393 (S.D. Fla. Nov. 16, 2020). While it is true that a defendant who defaults admits the well-pleaded allegations of fact in the complaint, a defaulting defendant does not admit any facts that are pleaded insufficiently or are mere conclusions of law. *Id.* at *1; *see also, e.g.*, *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 WL 4349806, at *5 (M.D. Fla. Nov. 24, 2009) (explaining that the pleading standard enumerated in *Iqbal* "is equally applicable to a motion for default judgment") (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Accordingly, an admission of the allegations in the complaint, by itself, may or may not be sufficient to grant default judgment. *See Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1316 (M.D. Fla. 2005) ("[T]he defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief."); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

To adequately state a claim for relief, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Once liability is established, the Court must also assess the form of relief. *See Chanel, Inc. v. French*, No. 05-61838-Civ, 2006 WL 3826780, at *2 (S.D. Fla. Dec. 27, 2006).

### III.   ANALYSIS

In his motion, Plaintiff seeks default final judgment against Defendant 1 as to: "Count I (Racketeering in Violation of 18 U.S.C. § 1964; Count II (Conversion); Count III (Unjust Enrichment); Count IV (Breach of Fiduciary Duty); and Count V (Imposition of a Constructive Trust and Disgorgement of Funds)." ECF No. 18 at 1-2.

**A.  Default Judgment Is Inappropriate When There Is a Risk of Inconsistent Judgments.**

In general, default judgment may be entered against a party for failing to plead or otherwise respond to a complaint.  *See Chanel, Inc.*, 234 F. Supp. 3d at 1258.  However, "in certain circumstances a default judgment is inappropriate if it results in inconsistency among judgments." *Rodriguez v. Guacamole's Authentic Mexican Food & More, LLC*, No. 11-62527-CIV, 2012 WL 718688, at *2 (S.D. Fla. Mar. 6, 2012) (quoting *Marshall & Ilsley Trust Co. v. Pate*, 819 F.2d 806, 811 (7th Cir.1987)).

"The general rule, derived from the seminal case of *Frow v. De La Vega*, 15 Wall. 552, 82 U.S. 552, 21 L. Ed. 60 (1872), is that when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted."  *Mayorga v. Stamp Concrete & Pavers, Inc.*, 2015 WL 3556972, at *2 (S.D. Fla. June 4, 2015) (quotation omitted); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2690 (4th ed. 2016). "The Eleventh Circuit has applied this same principle to cases where defendants are jointly and severally liable, as well as where defendants have closely related defenses."  *Tan v. Sushi Yama Japanese Rest., Inc.*, No. 20-20679-CIV, 2020 WL 6293216, at *4 (S.D. Fla. Aug. 4, 2020) (citing *Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc.*, 740 F.2d at 1499, 1512 (11th Cir. 1984) ("[E]ven when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits")), *report and recommendation adopted*, 2020 WL 6290345 (S.D. Fla. Oct. 27, 2020); *Rodriguez*, 2012 WL 718688, at *2 ("Several Circuits, including the Eleventh, have found *Frow* applies to situations where defendants are jointly and severally liable, or have closely related defenses.").

**B. Default Judgment Is Inappropriate in This Case at This Time.**

Here, Plaintiff's claims—at least as alleged in the Complaint—create the possibility of inconsistent judgments between Defendant 1 and the Doe Defendants. In particular, the Complaint alleges: "At all times material hereto, *Defendants, individually or jointly in any combination*, control (directly or indirectly) private cryptocurrency wallets and cryptocurrency exchange accounts in which all, or a portion of, Plaintiff's stolen cryptocurrency currently sits." ECF No. 1 at ¶ 9 (emphasis added). The Complaint further claims that the joint acts of the Defendants are what give rise to Plaintiff's claims, alleging that the "*Defendants* orchestrated, i.e., directed or *themselves* made, all of the fraudulent 'exchange's' communications (i.e., misrepresentations) to Plaintiff inducing him to each time make additional payments." *Id.* at ¶ 19 (emphasis added). Indeed, the Complaint's allegations demonstrate that the Complaint seeks to impose joint liability against all Defendants for their joint actions and their joint possession of the funds that were taken from the Plaintiff. *See, e.g., id.* at ¶ 49 ("As co-conspirators, the unlawful conduct of each member of the RICO Enterprise is attributed to every member, i.e., Defendants and the other yet-to-be identified co-conspirators."); ¶ 60 ("As a direct and proximate result of *Defendants'* unlawful actions, Plaintiff has suffered damages.") (emphasis added); ¶ 62 ("*Defendants* misappropriated Plaintiffs' funds.") (emphasis added); ¶ 63 ("*Defendants* converted Plaintiffs' funds . . . .") (emphasis added); ¶ 69 ("Equity requires that *Defendants* return to Plaintiff the benefits he conferred *upon them*") (emphasis added); ¶ 77 (seeking the imposition of "a constructive trust and disgorgement of funds upon the property . . . held and/or controlled by *Defendants, individually or jointly in any combination*") (emphasis added); ¶ 81 ("Any and all assets held by *Defendants, individually or jointly in any combination*, . . . must be held in trust for Plaintiff's benefit . . . .") (emphasis added). Under these circumstances, even though the Complaint does not use the magic

7

words "joint and several liability," it still creates the possibility of inconsistent judgements by seeking to hold all Defendants jointly liable for their jointly taken actions and for Plaintiff's damages. *See Tan*, 2020 WL 6293216, at *3 (recommending denial of final default judgment even though "the complaint does not use the magic words 'joint and several liability'").

Here, Judge Scola's Order on Default Judgment Procedures specifically directed the Plaintiff to state in its motion for default judgment "that there are no allegations of joint and several liability, and set forth the basis why there is no possibility of inconsistent liability." ECF No. 16 at 1. Plaintiff, however, has not stated that there are no allegations of joint and several liability. Instead, Plaintiff has stated that "there are no *effective* allegations of joint and several liability" because he "has not been able to identify Defendant [1]'s un-served DOE co-defendants." ECF No. 18 at 2 (emphasis added). In doing so, the Plaintiff has effectively conceded what is apparent from a review of the Complaint; the Complaint contains allegations of joint and several liability. Plaintiff nonetheless contends, without any citation to authority, that "there is no possibility of inconsistent liability between defendants who have not been, and cannot be identified, much less served." ECF No. 18 at 2. The Plaintiff, however, has not dismissed the unserved Doe Defendants, and the possibility remains that one or more of those Doe Defendants may be identified and served in the future. As a result, inconsistent judgments are a possibility. Courts, moreover, have found that where claims have been asserted against non-defaulting unserved defendants, there remains a possibility of inconsistent liability and inconsistent judgments that requires the denial of default judgment. *See, e.g., Clark v. D & B Cap. Inv., Inc.*, No. 19-cv-1401-Orl-40GJK, 2020 WL 13827621, at *2 (M.D. Fla. Aug. 26, 2020) (denying motion for default judgment where a Jane Doe defendant had not yet been served and complaint alleged counts against both the Jane Doe defendant and the defendant against whom default judgment was sought); *Jeunesse Glob.*

8

*Holdings, LLC v. Vivante, Inc.*, No. 17-cv-1061-Orl-41TBS, 2017 WL 9751312, at *5, *6 (M.D. Fla. Nov. 8, 2017) (concluding that default judgment was "inappropriate . . . until the case has been adjudicated with regard to all Defendants, including the Does," but providing for renewal of default judgment motion "once the Doe Defendants have been identified and served or removed from the case"), *report and recommendation adopted*, 2018 WL 3208377 (M.D. Fla. June 29, 2018); *Spy Optic Inc. v. Pattar Enter., Inc.*, No. 16-cv-1541-Orl-31GJK, 2017 WL 8893759, at *2 (M.D. Fla. Oct. 31, 2017) (denying motion for default judgment where complaint sought to hold defendants jointly and severally liable and where some of the defendants had not been served).

Here, given the procedural posture of this case, in which the Plaintiff's Complaint seeks to hold Defendant 1 and the twenty non-dismissed Doe Defendants jointly liable for their joint actions and in which the Plaintiff seeks to impose a constructive trust over, as well as to disgorge funds from, property that is held or controlled by all of the Defendants, there remains a significant risk of inconsistent judgments if a default judgment were to be entered against Defendant 1.  Given this danger of inconsistent judgments, it would be inappropriate at this time to enter a final default judgment against Defendant 1.  *See, e.g.*, *Tan*, 2020 WL 6293216, at *4; *see also Progressive Express Ins. Co. v. C&F Transp., LLC.*, No. 22-20775-SCOLA/GOODMAN, 2022 WL 17583749, at *6 (S.D. Fla. Oct. 13, 2022) (concluding that plaintiff's assertion "in its motion that '[t]here are no allegations of joint and several liability' . . . d[id] not allay the concern" about "the risk of inconsistent judgments" where the procedural posture of the case established a possibility of inconsistent judgments that warranted denial of default judgment).

## IV.   CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Final Default Judgment, ECF No. 18, is **DENIED WITHOUT PREJUDICE** pending final disposition of the claims asserted against

the non-defaulted Doe Defendants or any other change in the procedural posture of this case that eliminates the risk of inconsistent judgments.

The Plaintiff's Motion for Final Default Judgment is adjudicated by Order for administrative purposes. The parties retain the right to appeal any aspect of this Order under Rule 4 of the Magistrate Judge Rules for the Southern District of Florida *and* may also seek *de novo* review for that purpose. Failure to file an appeal with the District Judge precludes the filing of an appeal to the Court of Appeals and will operate as the parties' consent to entry of this Order denying Plaintiff's Motion for Final Default Judgment without prejudice.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 16th day of September 2024.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:     Hon. Robert N. Scola, Jr.
        Counsel of Record

10